# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTIRCT OF VIRGINIA
### LYNCHBURG DIVISION

In re
**VIRGINIA BROADBAND, LLC,**                      **Case No. 12-62535**
      **Debtor.**                                          **Chapter 11**

## MEMORANDUM DECISION

Virginia Broadband LLC ("VABB" or "LLC") is a Virginia limited liability company. It is a manager-managed LLC. Since 2006 its members have clashed between and among themselves and the LLC over fundamental management disagreements, ownership and control battles, and remuneration rights. At present the LLC is a debtor in possession in Chapter 11. The LLC has objected to the claims of one of the former members, Warren Manuel, and asks this Court to: 1) disallow Mr. Manuel's claims (proofs of claim numbers 24, 25, and 26); or 2) equitably subordinate Mr. Manuel's claims pursuant to Bankruptcy Code section 510; or 3) recharacterize Mr. Manuel's claims from general unsecured to equity using this Court's equitable powers under Bankruptcy Code section 105. For the reasons explained below, the Court denies the LLC's requests.

## BACKGROUND AND PROCEDURAL HISTORY

In 2003, Robert Sullivan and Hunter Chapman formed VABB.[1] In 2004, Warren Manuel joined VABB.[2] Each made equity contributions, and each served on the board of managers.[3] Warren Manuel worked for VABB as Chief Executive Officer (CEO) from 2004 until October

---

[1]      Trial Tr. 9, 97, Sept. 16, 2014.

[2]      *Id.* at 9, 97, 172.

[3]      *Id.* at 9–11, 16, 75–76, 172.

2010 and again from February 2011 to August 2012.[4]  In 2006, Mr. Chapman loaned money to VABB, Mr. Manuel loaned money to VABB, and Middleburg bank loaned money to VABB guaranteed by Mr. Chapman and Mr. Manuel.[5]  In 2006, Mr. Sullivan reduced his membership interest from 26% to 10%.[6]  After this occurred, Mr. Sullivan lost his position on the board of managers, a matter that became a source of contention between Mr. Sullivan and VABB.[7]  Mr. Sullivan filed suit against VABB in March 2007, and ultimately the parties agreed that Mr. Sullivan would be paid $525,000—$100,000 immediately and the remaining balance to be paid under a note over the subsequent seven years.[8]  The note contained a confession of judgment clause and in July 2010 Mr. Sullivan filed for judgment,[9] but subsequently in November 2011 Mr. Sullivan and VABB entered into a new agreement under which Mr. Sullivan received monthly payments of $5000 plus a $10,000 penalty.[10]

During this period, 2007 – 2011, VABB obtained loans from Mr. Manuel, Mr. Chapman, Mark Davis, the Huggins Family Trust, Tom Huggins, and EVB Bank.[11]  VABB issued notes for

---

[4]     *See id.* at 10, 108, 172, 182–83, 240–41.

[5]     *See id.* at 180, 199; Proof of Claim 15-1; Proof of Claim 24-1; EVB's Mot. for Relief 2, ECF Doc. No. 563.

[6]     Trial Tr. 105.

[7]     *See id.* at 105–07.

[8]     *Id.* at 107.

[9]     *Id.* at 108–09.  According to his testimony, Mr. Sullivan enforced the confession of judgment clause because VABB was late on its July 2010 monthly payment.  *Id.*

[10]    *Id.* at 109–10.

[11]    *Id.* at 75–76, 180, 197–203, 257; Proof of Claim 3-1; Proof of Claim 5-1; Proof of Claim 6-1; Proof Claim 24-1; Proof of Claim 28-1; EVB's Mot. for Relief 2, ECF Doc. No. 563.

the loans, and all loans except for EVB's loan are unsecured.[12]  EVB issued a secured loan in

2009 and refinanced the loan in April 2011 in the principal amount of $590,000.[13]

Also during this period, 2007 – 2011, membership on the board varied and different

members served as chairman. Robert Chapman was chairman of the board during 2007,[14] and

remained chairman of the board during most of 2008;[15] Bruce Barnett was chairman during

2009;[16] and Peter Deliso was chairman of the board at some point after he joined the board in

2009.[17]

In this stage from 2008 – 2011, VABB failed to pay personal property taxes;[18] sought a

loan from the United States Department of Agriculture Rural Development for Rural Utility

Service (RUS);[19]and sought a loan to pay for audit services.[20]  Around this time, Mr. Sullivan

sought judgment (July 2010),[21] and shortly thereafter the board asked Mr. Manuel to take a

reduction in salary to $175,000.[22]  In October 2010, the board removed Mr. Manuel as CEO.[23]

---

[12]     *See* Schedule F, ECF Doc. No. 68-4; Proof of Claim 3-1; Proof of Claim 5-1; Proof of Claim 6-1; Proof Claim 24-1; Proof of Claim 28-1.

[13]     *See* Proof of Claim 3-1; EVB's Mot. for Relief 2, ECF Doc. No. 563.

[14]     Trial Tr. 199–201.

[15]     *Id.* at 181–82.

[16]     *Id.* at 51.

[17]     *Id.* at 57.

[18]     *Id.* at 117–21, 128–35.

[19]     *Id.* at 189–91.

[20]     *See id.* at 217–18.

[21]     *Id.* at 108–09.

[22]     *Id.* at 182.

[23]     *Id.* at 10, 65, 182–83.

Not long after this, RUS declined the loan.[24]  RUS cited its primary reason as its inability to "determine the financial feasibility of the project because audited financials that reconcile to the pro-forma were not provided."[25]  Mr. Deliso resigned from the board and expressed frustration over the management, suggesting Mr. Manuel needed to be replaced.[26]

Membership on the board continued to change and in February 2011, Mr. Manuel was restored to the board and was appointed CEO.[27]  Later that year, in April 2011, EVB refinances its loan with VABB and issues a new note for $590,000.[28]  Also in this year, VABB borrows additional funds from Tom Huggins, and VABB enters into the new note with Mr. Sullivan.[29]  In January 2012, the board discussed approval of a note in the amount of $1,194,649 to Mr. Manuel.[30]  The board resolved that it would proceed to formalize agreements "for the loans granted to [VABB] by Mr. Tom Huggins in the amount of $15,000.00 and $20,000.00 and Mr. Warren Manuel in the amount of $1,194,649.00";[31] however, members of the board recalled that at the meeting in January the board did not approve the note presented that day by Mr. Manuel.[32]  In February 2012, the board approved the minutes of the January meeting that authorized

---

[24]     *Id.* at 28–29, 252–53.

[25]     VABB's Ex. 3; Trial Tr. 252–53.

[26]     Trial Tr. 47–50.

[27]     *Id.* at 188, 240–41.

[28]     *See* Proof of Claim 3-1; EVB's Mot. for Relief 2, ECF Doc. No. 563.

[29]     *See* Trial Tr. 109–10; Proof of Claim 3-1.

[30]     Manuel's Ex. K; Trial Tr. 81–82, 91–92.

[31]     Manuel's Ex. K.

[32]     Trial Tr. 82–84, 91–92, 242–43, 283–84, 286.

formalizing the indebtedness to Mr. Manuel.[33] In February 2012, VABB issued a note to Mr.

Manuel in the amount of $1,194,649.00 signed by Larry Chang, chairman of the board of

managers at that time.[34]  In April 2012, the board reviewed the February note payable to Mr.

Manuel and after discussion resolved to make no changes to the note to Mr. Manuel.[35]  In August

2012, the board removed Mr. Manuel from the board and from all offices.[36]  Mr. Sullivan was

reappointed to the board of managers.[37]  In November 2012, VABB filed a Chapter 11 petition in

this Court.

In the Chapter 11, VABB has been operating as a debtor in possession.  Shortly after

filing the petition, VABB obtained an order setting a bar date for proofs of claim.[38]  The United

States Trustee appointed an unsecured creditors committee ("Committee").[39]

The evolution of the case has not been without acrimony.  Mr. Manuel (along with other

former members or unsecured creditors) filed an adversary proceeding challenging the board

approval of the Chapter 11 filing.[40]  In addition, the Committee sought dismissal of the case

---

[33]      Manuel's Ex. K; Trial Tr. 295.

[34]      Proof of Claim 25-2; Manuel's Ex. B; Trial Tr. 295.

[35]      Manuel's Ex. K; *see also* Trial Tr. 285, 296.

[36]      Trial Tr. 108, 290.

[37]      Amended Second Amended Disclosure Statement 4, ECF Doc. No 442.

[38]      The deadline for filing claims fixed by this Court was February 13, 2013.  Order Establishing a Bar Date for Filing Proofs of Claim, ECF Doc. No. 52.

[39]      Appointment of Unsecured Creditors Committee, ECF Doc. No. 48.

[40]      Mot. to Obtain Declaratory Judgment and Further Relief Pursuant to 11 U.S.C. Under Rule 7001(9), *Manuel v. Chapman (In re Virginia Broadband, LLC)*, 13-06039 (Bankr. W.D. Va. Apr. 26, 2013), ECF Doc. No. 1. The adversary proceeding was filed in the names of Mr. Manuel, Mr. Chang, Mr. Smith, and Virginia Broadband, LLC.

claiming an invalid board approval authorizing the chapter 11 filing.[41] This Court denied the

motion to dismiss the case.[42]  The plaintiffs voluntarily dismissed the adversary proceeding.[43]

At this stage in the Chapter 11, the LLC has received approval of a disclosure

statement,[44] and has filed a proposed Chapter 11 plan, but has halted the confirmation approval

pending a determination of the challenges to Mr. Manuel's claims and treatment of those claims.

The proposed plan currently provides that unsecured creditors holding claims up to $50,000 are

to be paid cash equal to 5% of the allowed amount of the claim within twelve months of the

distribution date; unsecured creditors over $50,000 will receive an equity membership in the new

reorganized entity.  All equity interests and "other equity interests" will be cancelled on the

distribution date and the holders will not receive any interest in the reorganized debtor or any

property in exchange.  Under this treatment, many of the former managers will participate in

management of the new entity, because they are unsecured creditors in this case.[45]  VABB

predicts that it "cannot survive as an operating company if Mr. Manuel is involved in

management."[46]  VABB further believes that "Mr. Manuel would use his equity owner position

to continue the Pre-Petition management struggles and would engage in litigation against

[VABB] that would be fatal to [its] continued existence."[47]  Therefore, VABB has proposed not

---

[41]      Mot. to Dismiss Case Pursuant to 11 U.S.C. §1112(b), ECF Doc. No. 204.

[42]      Order Den. Creditors' Committee's Motion to Dismiss Under 11 U.S.C. §1112(b), ECF Doc. No. 204.

[43]      Order Dismissing Adversary Proceeding, *Manuel v. Chapman (In re Virginia Broadband, LLC)*, 13-06039
(Bankr. W.D. Va. Nov. 27, 2013), ECF Doc. No. 33.

[44]      Order Approving Disclosure Statement, ECF Doc. No. 473.

[45]      *See* Schedule F, ECF Doc. No. 68-4; Claims Register.

[46]      Amended Second Amended Disclosure Statement 17, ECF Doc. No 442.

[47]      *Id.*

to treat Mr. Manuel like the other unsecured creditors and instead proposes neither payment nor an equity interest in the new reorganized debtor.[48]

### Objections to Claims

Warren Manuel filed three proofs of claim: claim number 24, claim number 25 and claim number 26.  The LLC objected to each of Mr. Manuel's proofs of claim.

### *Claim 24*

VABB scheduled two debts owed to Warren Manuel, each as disputed.  VABB scheduled one debt to Warren Manuel in the amount of $514,645.44, described the consideration for this debt as "note," did not schedule a date for this debt, and indicated this debt "disputed" by checking the appropriate box on the schedules.[49]  Prior to the bar date, Warren Manuel filed claim 24 in the scheduled amount $516,645.44 and described the consideration as for "money loaned."[50] Mr. Manuel attached to the claim copies of:

1)   a promissory note dated November 14, 2006;
2)   a resolution from VABB authorizing the November 14, 2006 loan;
3)   a promissory note dated December 15, 2006;
4)   a resolution from VABB authorizing the December 15, 2006 loan;
5)   a promissory note dated December 30, 2006;
6)   a resolution from VABB authorizing the December 30, 2006 loan;
7)   a promissory note dated February 28, 2007;
8)   a resolution from VABB authorizing the February 28, 2007 loan;
9)   a promissory note dated March 14, 2007;

---

[48]   Second Amended Plan of Reorganization, ECF Doc. No. 400 (unconfirmed).

[49]   Schedule F, ECF Doc. No. 68-4.

[50]   Proof of Claim 24-1.

10)   a resolution from VABB authorizing the March 14, 2007
      loan;
11)   a promissory note dated March 30, 2007;
12)   a resolution from VABB authorizing the March 30, 2007
      loan;
13)   a promissory note dated April 5, 2007;
14)   a resolution from VABB authorizing the April 5, 2007
      loan;
15)   a promissory note dated April 16, 2007;
16)   a resolution authorizing the April 16, 2007 loan;
17)   a promissory note dated May 14, 2007;
18)   a resolution authorizing the May 14, 2007 loan;
19)   a promissory note dated May 21, 2007;
20)   a resolution from VABB authorizing the May 21, 2007
      loan;
21)    a promissory note dated June 27, 2007; and
22)   a resolution authorizing the June 27, 2007 loan.[51]

The LLC objected to claim number 24 asserting:

> Claim is based on notes.  Claimant solely maintained
> records regarding sums due on notes. Claimant controlled debtor at
> time notes should have been paid. No documentation as to amounts
> due and amounts paid under the notes. Notes should be
> subordinated to claims of other unsecured creditors based on
> actions of Claimant as detailed in Amended Second Amended
> Disclosure Statement.[52]

Subsequently, the LLC supplemented it objection to claim as follows:

> VABB states that Claims 24, 25 and 26 should be
> recharacterized as equity pursuant to the standards announced in *In
> re Official Comm. of Unsecured Creditors for Dornier Aviation
> (North America)*, Inc., 453 F.3d 225 (4th Cir. 2006). The basis for
> recharacterization is set forth in the Debtor's Memorandum in
> Support of Confirmation of its Second Amended Plan of
> Reorganization dated March 13, 2014 and Objections to Claims of
> Warren Manuel [Docket No. 512].[53]

---

[51]   *Id.*

[52]   Objection to Claim No. 24-1, ECF Doc. No. 483.

[53]   Debtor's Supplemental Objection to Claims 24, 25 & 26, ECF Doc. No. 551.

The LLC did not plead any other grounds in support of disallowance.

### *Claim 25*

VABB scheduled a second debt to Warren Manuel in the amount of $1,134,289.41 described the consideration as "note," did not indicate a date for the debt, and scheduled it as disputed by checking the appropriate box on the bankruptcy schedules.[54]  Mr. Manuel filed timely claim number 25 in the amount of $1,194,649.00 and listed as the basis for the claim "money loaned."[55]  Mr. Manuel attached to the proof of claim a promissory note dated February 15, 2012, in the amount of $1,194,649.00 and signed by Larry Chang as the chairman of the board of managers.  On February 4, 2013, Mr. Manuel amended claim 25 and added to it the interest that had been previously been included in claim 26.[56]  The amended proof of claim totaled $1,248,830 and included as attachment a copy of the note, a copy of the board meeting minutes that stated that the company resolved to formalize "agreements for the loans granted to the company by Tom Huggins in the amounts of $15,000 and $20,000 and Mr. Warren Manuel in the amount of $1,194,649.00," plus an itemization of the calculation for the claim (principal plus interest from the date of the note's maturity to the date of the petition).[57]

VABB filed an objection to claim 25 asserting:

> Claim is based on a note dated February 15, 2012, at which time
> [VABB]'s operations were not sustainable. Basis of that note is not

---

[54]      Schedule F, ECF Doc. No. 68-4.

[55]      Proof of Claim 25-1.

[56]      Proof of Claim 25-2.

[57]      *Id.*

> loan to the Debtor, but deferred salary, bonuses and other amounts
> allegedly owed to Claimant. Claimant solely maintained records
> regarding sums due that were the basis of the note. Note includes
> capitalized interest. Portion of sums included in note (if owed)
> were barred by the statute of limitations. Note was not
> unanimously approved by board of directors of VABB.  Note is an
> attempt by Claimant to create obligation to him at time VABB was
> insolvent and under significant pressure from creditors.[58]

In addition to the objection to claim, VABB filed a memorandum in support of confirmation and

its objection to claim 25.[59]  The debtor argues in the memorandum in support of the objections to

claim that the debtor will present evidence "that Mr. Manuel's salary was higher than was

authorized by the board and that the bonuses were not authorized by the board."[60]  In addition,

the debtor argues in the memorandum, "Mr. Huggins, who was on the board at the time the note

was signed, will testify that the note was never approved by the board, despite statements to that

effect in the minutes. Finally, the note was signed by Mr. Chang, who is Mr. Manuel's personal

friend. Under such circumstances, Mr. Manuel cannot show that the note that is the basis of

claim 25-2 was inherently fair or entered into in good faith."[61]

### *Claim 26*

Mr. Manuel timely filed claim 26 on February 4, 2013.[62]  Claim 26 originally reported

the amount owed as $83,818.87.[63]  The claim describes the debt as "business expenses encurred

[sic] for the debtor" and attached several pages of expense report ledgers, most of which

---

[58]    Objection to Claim 25-1, ECF Doc. No. 484.

[59]    Debtor's Memorandum in Support of Confirmation, ECF Doc. No. 512.

[60]    *Id.* at 13.

[61]    *Id.*

[62]    Proof of Claim 26-1.

[63]    *Id.*

contained hand written notations editing the figures on the ledgers.[64]  This debt had not been scheduled.

The LLC objected to the original proof of claim number 26. The LLC objection asserts:

> Claim is based on sums allegedly owed Claimant. Claimant solely maintained records regarding sums due. At least $45,110.65 is for interest or loan payments and should be included in other claims. Claim provides no support for $32,000.08 claimed. Claim lacks proper and complete documentation. Portion of sums claimed (if owed) are barred by the statute of limitations. Claimant controlled debtor at time sums allegedly due should have been paid. Should be subordinated to claims of other unsecured creditors based on actions of Claimant as detailed in Amended Second Amended Disclosure Statement.[65]

After the LLC filed this objection, Mr. Manuel amended the proof of claim, reducing the amount claimed by $34,700.71.[66]  After reducing the proof of claim to $49,118.16, Mr. Manuel amended the claim yet again, this time increasing the amounts claimed by $48,688.31 for a total amended claim 26 in the amount of $97,806.47.[67]  The additional amounts pertain to unpaid salary when the LLC placed a stop payment on several outstanding salary checks.[68]  Mr. Manuel filed the amended claims after the bar date.[69]  The LLC filed a supplement to its objection to claim 26 protesting that the second amended claim is untimely to the extent it claims additional amounts for a matter unrelated to the original claim and the first amendment to the original

---

[64]     *Id.*

[65]     Objection to Claim 26, ECF Doc. No. 485.

[66]     Proof of Claim 26-2.

[67]     Proof of Claim 26-3.

[68]     *See id.*

[69]     *See id.*; Order Establishing a Bar Date for Filing Proofs of Claim, ECF Doc. No. 52.

claim.[70]  Specifically, the supplement requests that the Court disallow the sum of $48,688.31.[71]

In addition, the LLC filed the supplement asserting that claims 24, 25 and 26 should be

recharacterized.[72]  Many of these grounds are identical to the grounds raised in the objection to

claim number 24.

Equitable Subordination

Initially VABB filed a disclosure statement relating to a proposed plan that subordinated

the claims of Mr. Manuel.[73]  He objected.[74]  VABB subsequently amended the disclosure

statement to describe the basis for equitable subordination, and filed objections to Mr. Manuel's

proofs of claim charging that notes "should be subordinated to claims of other unsecured

creditors based on actions of Claimant [Mr. Manuel] as detailed in Amended Second Amended

Disclosure Statement."[75]  The Disclosure Statement explained the grounds for equitable

subordination as follows:

> It is difficult to summarize the wide ranging damage to the
> Debtor that Mr. Manuel caused prior to his removal as manager of
> the Debtor. Since Mr. Manuel was removed from management in
> August of 2012, the Debtor's current management has been
> engaged in a campaign to stabilize the operations of the company,
> obtain accurate financial data, and repair relationships with
> creditors and other business partners damaged by Mr. Manuel.

---

[70]    Debtor's Supplemental Objection to Claim 26, ECF Doc. No. 547.

[71]    *Id.*

[72]    Debtor's Supplemental Objection to Claims 24, 25 & 26, ECF Doc. No. 551.

[73]    Disclosure Statement, ECF Doc. No. 188.

[74]    Objection by Warren P. Manuel to Debtor's Disclosure Statement, ECF Doc. No 235.

[75]    Objection to Claim 24-1, ECF Doc. No. 483; Objection to Claim 25-1, ECF Doc. No. 484; Objection to
Claim 26-1, ECF Doc. No. 485.

A non-exclusive summary of actions by Mr. Manuel that damaged the Debtor and justify his separate classification and treatment under the Plan are as follows:

1) Mr. Manuel failed to pay personal property taxes due on Debtor's equipment. Some personal property taxes had not been paid for four years, resulting in the additional burden of penalties and interest on unpaid taxes;

2) Mr. Manuel authorized payment of health insurance for a former VABB employee for five years after the employee left the company, costing VABB nearly $60,000.00;

3) Mr. Manuel failed to provide sufficient information to permit VABB's accountants to formally audit the company's books and records;

4) Mr. Manuel executed a lease with KASA properties, the Debtor's former landlord, without proper approval of the VABB Board of Managers;

5) Mr. Manuel authorized four $30,000 "bonus" payments to himself (totaling $120,000) without proper approval of the VABB Board of Managers;

6) A note from the Company payable to Mr. Manuel in the amount of $1,194,649 was made by the Company without proper approval of the VABB Board of Managers at Mr. Manuel's direction and for his personal benefit. This note was made in February of 2012, and is subject to being avoided both as a preferential transfer and fraudulent transfer under the Bankruptcy Code and to being declared void as an unauthorized ultra vires act by Mr. Manuel;

7) Mr. Manuel authorized and paid himself a salary that was far in excess of the amount justifiable by the company's financial condition. Mr. Manuel was paid a total of $1,296,874.69 over his eight years at the company. At the time he was removed from management, Mr. Manuel was being paid $175,000 per year despite the fact that the company was unable to pay its obligations as they came due.

The restriction on Mr. Manuel owning equity in the Reorganized Debtor, either directly or indirectly, is based on the Debtor's belief that the Reorganized Debtor cannot survive as an operating company if Mr. Manuel is involved in management. The Debtor believes that Mr. Manuel would use his equity owner position to continue the Pre-Petition management struggles and would engage in litigation against the Reorganized Debtor that would be fatal to the Debtor's continued existence.[76]

---

[76]    Amended Second Amended Disclosure Statement 16–17, ECF Doc. No 442.

VABB filed a memorandum in support of confirmation and objection to claims.  In the

memorandum, the debtor explains the basis for equitable subordination as "Mr. Manuel's long

history of actions for his own benefit and to the detriment of the Debtor and his long history of

management incompetency and failure to act."[77]  VABB stated in this memorandum that it "will

present evidence to support Mr. Manuel's repeated breaches of fiduciary duty."[78] VABB

identified the breach of fiduciary duty as:

> self-dealing with the Debtor, including arranging for the signing of
> the 1.2 million dollar note that is the basis of Claim 25-2 and his
> setting of an excessive salary without board approval. Mr.
> Manuel's breaches of fiduciary duty also include his inaction as
> manager, including his failure to pay personal property taxes, his
> failure to obtain a proper audit of the company and his failure to
> even respond to business mail directed to the company. VABB
> anticipates that the evidence submitted at the hearing on
> confirmation will support the subordination of Mr. Manuel's
> allowed claims . . . .[79]

In short, according to VABB, Mr. Manuel is guilty of: "management incompetence" such as

payment of health insurance over five years for a former employee; "failure to act" such as

failure to obtain a proper audit of the company, failure to provide sufficient information to

auditing firm to permit it to conduct an audit, failure to pay personal property taxes and failure to

timely open mail; "self-dealing" such as arranging for a 1.2 million dollar note from VABB to

Mr. Manuel, setting an excessive salary without board approval, authorizing a bonus without

board approval, authorizing and paying himself a salary at the time when the LLC was not

---

[77]     Debtor's Memorandum in Support of Confirmation of Its Second Amended Plan of Reorganization Dated
March 13, 2014 and Objections to Claims of Warren Manuel 15, ECF Doc. No. 512

[78]     *Id.* at 16.

[79]     *Id.*

paying its obligations as they came due; and finally Mr. Manuel is guilty of executing a lease

without board approval.[80]

Recharacterization

VABB first mentions recharacterization in its memorandum filed on July 14, 2014.  The

Debtor's Supplemental Objection to Claims 24, 25, & 26 filed on August 29, 2014, includes

recharacterization as a final basis for its objection to claims.  In its memorandum, VABB states

the following factors support recharacterization:

> [T]he claims were not made at arm's length and [] were not
> properly loans at all.  Mr. Manuel's claims were based on
> obligations without a firm repayment date or schedule prior to their
> being reduced to notes.  Further, the obligations were long-
> standing and only were incorporated into a note when it was
> apparent that VABB's house of cards was about to topple.  The
> Debtor was undercapitalized at the time the obligations were
> created.  Mr. Manuel was in control of the Debtor when the
> obligations were created and thus able to control their form.  There
> was no security for the obligations.  The corporation did not have
> the ability to obtain third-party financing for the obligations at the
> time they were made.  Finally, there were no funds available to
> repay the obligations to Mr. Manuel.

The parties do not contest that:  1)  Mr. Manuel was an insider, 2) the notes are demand notes

without a firm repayment schedule but do contain a payment due date, 3) there was no security

for the obligations, 4) there was no sinking fund for the notes to Mr. Manuel.  The parties contest

VABB's remaining allegations.

*Evidence at the Hearing*

---

[80]    *See generally id.*

At the hearing, the debtor presented witness testimony of Peter Deliso, Lawrence Gregory Andrews, Thomas Huggins, Robert Sullivan, and Linda Taylor.[81]  In response, Mr. Manuel testified and offered testimony from Lauren Williams, James Smith, and Laurence Chang.[82]  Both the debtor and Mr. Manuel submitted exhibits.

*Claim 24*

Only Mr. Manuel testified regarding claim 24. During his testimony, he explained the exhibits in the record showing the notes attached to claim 24.[83]  He described some loans he incurred from Middleburg bank for the LLC.[84]

*Claim 25*

At the hearing, Tom Huggins testified.  Mr. Huggins joined the board in January 2011.[85] He testified that he approved re-hiring Mr. Manuel and appointing him as CEO.[86]  He approved returning salary for Mr. Manuel back to $175,000 effective March 15, 2011.[87]  He explained that later that year, he suggested to the board that if legitimate, the amounts owed to Mr. Manuel should be reduced to a note.[88]  He testified that the board authorized the task to memorialize a

---

[81]     *See id.* at 2.

[82]     *See id.* at 2–3.

[83]     *Id.* at 210–12, 227–29.

[84]     *Id.* at 227–29.

[85]     *Id.* at 89.

[86]     *Id.* at 89–90.

[87]     *Id.* at 90–91.

[88]     *Id.* at 81.

note to Mr. Manuel in January 2012.[89]  He admitted he approved reducing the debt to Mr.

Manuel to a note.[90]  He also testified that Mr. Manuel presented a note to the board at a meeting

in January 2012, and it was not approved because it was a 90-day note and VABB would not

have the ability to pay it in 90 days.[91]  Discussing his recollection of the January 2012 meeting,

he recalled that "the discussion [had] always been that if the notes and the loans were verified

and they're legitimate, then [VABB] would need to deal with them;"[92] he did not, however,

challenge the accuracy of the minutes. He admitted he approved the minutes of the January 2012

meeting.[93] Discussing his recollection of the February 2012 meeting, he acknowledged that

"there was a folder put on the table at the end of the meeting supposedly to verify the loans," but

he did not read it.[94]

　　　　Lauren Williams testified regarding the meeting in January 2012.  She testified that she

attended the meeting, prepared the minutes, and signed the minutes.[95]

　　　　Larry Chang testified.  He testified that in his opinion Mr. Manuel helped the company

meet its benchmarks.[96]  He explained the profit and loss statement for the LLC showed a profit

and explained how the LLC was profitable in 2011 continuing into 2012.[97]  Mr. Chang described

---

[89]　　*Id.* at 91–92.

[90]　　*Id.* at 92–93.

[91]　　*Id.* at 82–83.

[92]　　*Id.* at 92–93.

[93]　　*Id.*

[94]　　*Id.*

[95]　　*See id.* at 163-65.

[96]　　*Id.* at 292–93.

[97]　　*Id.* at 293–94.

that at the January 2012 board meeting, he presented a letter from Mr. Chapman proposing a resolution to remove Mr. Manuel; the proposal was rejected by majority vote.[98]  In his testimony, he explained that the board declined to approve the note to Mr. Manuel at the January 2012 meeting, but did approve formalizing the indebtedness into a note, by a unanimous vote, and subsequently ratified the note to Mr. Manuel at its April 2012 meeting.[99]

Mr. Manuel testified. During his testimony he described his salary, his agreement to reduce his salary and his conditional agreement to retire.[100]  During his testimony, he explained the exhibits in the record showing the employment agreements and his notes.[101]  He testified that the board approved the exercise to draft a note to him in 2012.[102]  He stated that he calculated the amount due by crediting what he was paid from what he was owed, and he derived his calculations from his reconciliation file.[103]  He denied that in 2012, VABB needed to file bankruptcy.[104]  Mr. Manuel's testimony regarding the January 2012 meeting corroborated Mr. Huggins' testimony and Mr. Chang's testimony regarding the January 2012 board meeting and specifically that at the meeting, the board authorized memorializing a note but not the specific 90 day note he presented to the board that day.

*Claim 26*

---

[98]     *Id.* at 291–92; *see also* Manuel's Ex. K.

[99]     Trial Tr. 295–97.

[100]    *Id.* at 182–85.

[101]    *Id.* at 173–77, 184, 198–202, 209–15.

[102]    *See id.* at 250–51.

[103]    *Id.* at 223.

[104]    *Id.* at 247–48, 259–60.

Lauren Williams testified.  She explained her job as an accounting executive for VABB.[105]  She testified that as part of her duties, she processed accounts payable and accounts receivable but transitioned to accounts payable full time.[106]  She explained that Mr. Manuel incurred expenses and submitted expense reimbursement sheets.[107]  She testified that Mr. Manuel's expenses were not paid every month, because "he made sure other people were paid prior.  He put his off for a while."[108]  Further, he would not pay himself if there were unpaid vendors.[109]  She affirmed that during this time there were unpaid vendors.[110]  She acknowledged the accounts payable for Mr. Manuel included unreimbursed expenses.[111]  She could not explain if the account included interest and deferred salary.[112]  She prepared the minutes of board meetings.[113]

Mr. Manuel testified.  He described the expenses he paid on behalf of the LLC (paid a bill to Intuit "a regular operating expense of VABB," paid a Chase credit card, paid a vendor named "Letter Direct" and generally described loaning money to the company for it to make purchases).[114]

### *Equitable Subordination*

---

[105]     *Id.* at 155–56.

[106]     *Id.*

[107]     *Id.* at 156–57.

[108]     *Id.* at 158.

[109]     *See id.* at 167.

[110]     *Id.* at 168.

[111]     *Id.* at 164–65.

[112]     *Id.* at 165.

[113]     *Id.* at 164.

[114]     *Id.* at 205–06, 233–36.

*Mr. Manuel's Failure to Pay Personal Property Taxes*

Mr. Manuel and Mr. Smith testified regarding the charge that Mr. Manuel failed to pay personal property taxes timely.  The parties agree that personal property taxes were not paid during 2008, 2009, 2010 and 2011.[115]  Mr. Manuel testified that he believed the property taxes to be overstated.[116]  He admitted that VABB did not pay taxes during these years adding that the years in question (2009 – 2011) were "tough times" and the company did not have the money.[117]  He also stated that he disputed the tax liability, that VABB was working for a long time "to get those straight" and "wouldn't have paid them anyhow."[118]  He testified that he did not personally file the tax returns.[119]  Mr. Smith testified that as part of his consulting services he reviewed the personal property liability.[120]  Mr. Smith described his concern that some of the tax liability assessed against VABB related to leased property for which VABB would not be liable, and that to correct the assessments required coordination across multiple jurisdictions.[121]  He elaborated on his efforts to meet with the localities, enter into an agreement to reconcile the property taxes excepting the leased property, and subsequently prepare and file returns for the outstanding years.[122]  He admitted he did not begin these efforts until 2010.[123]  According to Mr. Smith, he

---

[115]     *See, e.g.*, *id.* at 231.

[116]     *See id.*

[117]     *Id.* at 231–32.

[118]     *Id.* at 231.

[119]     *Id.* at 251–52.

[120]     *Id.* at 287.

[121]     *Id.* at 277–78.

[122]     *Id.* at 277–81.

[123]     *Id.* at 287.

prepared and filed a Culpeper County personal property tax return, and he prepared amended

returns and left them in Mr. Manuel's office in August 2010.[124]  It is uncontested that VABB had

a tax credit of approximately $87,000 with Culpeper County in August of 2012.[125]

*Payment of Health Insurance for a Former Employee*

Three witnesses testified regarding the assertion that Mr. Manuel exercised management

incompetence by authorizing payment of health insurance to Jim Smith after he was no longer an

employee.  Mr. Sullivan testified that Jim Smith was an employee in 2006 and, he believed, in

2007 he ceased being an employee.[126]  Mr. Sullivan testified that Mr. Smith had been eligible for

health care coverage provided by VABB for at least some portion of Mr. Smith's employment.[127]

The other evidence regarding the payment of health insurance for Mr. Smith came from

testimony of Mr. Manuel and Mr. Smith.  Mr. Manuel described the services Mr. Smith

performed for VABB.[128]  Mr. Smith testified that he worked as a consultant for VABB from

2006 until 2011.[129]  He testified that he did not receive salary, and, except for a brief period in

2006, he received only health care coverage for his consulting services.[130]  This testimony was

not controverted.

---

[124]     *Id.* at 279–82.

[125]     *Id.* at 150.

[126]     *Id.* at 135–36.

[127]     *Id.* at 137.  VABB is a manager-managed limited liability company.  Although Mr. Sullivan was unsure of
the exact terminology to describe Mr. Smith's role in the company, the Court understands that at times Mr. Smith
held a position that Mr. Sullivan testified was eligible for health care coverage.

[128]     *Id.* at 191.

[129]     *Id.* at 269.

[130]     *Id.*

*Failure to Obtain Audit of the Company*

Several witnesses testified regarding VABB's assertion that Mr. Manuel failed to obtain a proper audit of the company and failed to provide sufficient information to accountants to permit them to perform an audit. Mr. Deliso testified that he joined the board in 2009.[131] Mr. Deliso professed that he made requests of Mr. Manuel to get an audit done and Mr. Manuel "wasn't being very cooperative at all."[132] Mr. Deliso admitted that the board authorized an audit committee and that he was chair of the audit committee.[133] Mr. Deliso remarked that the LLC engaged an audit firm who performed services and prepared a report that according to Mr. Deliso was "not an audit" and was the "results of a, quote, consulting engagement."[134]

Later Mr. Andrews testified that he became involved with VABB in March 2010 at the request of REC to assist VABB with audited financials.[135] He reported that at that time the firm of Cherry Bekaert & Holland had been engaged to prepare an audit.[136] Mr. Andrews testified that he assisted in the preparation of the audit.[137] In this role, he prepared and uploaded schedules to Cherry Bekaert.[138] When Cherry Bekaert advised Mr. Andrews that it needed additional information, Mr. Andrews sought the information from Mr. Manuel and Lauren

---

[131]   *Id.* at 23.

[132]   *Id.* at 29.

[133]   *Id.*; *see also* Manuel's Ex. K.

[134]   Trial Tr. 55.

[135]   *Id.* at 62–63.

[136]   *Id.* at 63–64.

[137]   *Id.*

[138]   *Id.* at 63–64, 70.

Williams.[139]  According to Mr. Andrews, Mr. Manuel and Ms. Williams were cooperative; he

could not say there were times they were unable to find information and to the best of his

knowledge they provided all information requested.[140]  He elaborated that during this exercise,

he uncovered no evidence of dishonesty.[141]

Also during the hearing, Laruen Williams testified.  She described her role in the audit

exercise and corroborated Mr. Andrews's testimony.[142]  She stated that she and Mr. Manuel were

able to locate and provide all of the information requested by Mr. Andrews or Cherry Bekaert.[143]

### Failure to Open Mail

At the hearing, counsel for VABB held in the palm of his hand a bundle of sealed

envelopes held together by a rubber band.  A copy of the collection of unopened mail is in the

record at VABB's Exhibit 2.  Mr. Sullivan testified that the bundle of unopened mail was "in

drawers and file folders, in file cabinets in [Ms. Williams's] office" during the time he rejoined

VABB in August 2012.[144]  Mr. Sullivan described discovering unpaid bills, collection notices

and checks returned for insufficient funds during this period.[145]  Lauren Williams later testified.

---

[139]     *Id.* at 70–71.

[140]     *Id.* at 71–72.

[141]     *Id.* at 72.

[142]     *Id.* at 155–56, 159.

[143]     *Id.* at 159.

[144]     *Id.* at 126–27.

[145]     *Id.* at 112–35.

She confirmed that she had been fired from VABB.[146]  She stated that unopened mail was the

basis for her termination.[147]

*Excessive Salary and Unauthorized Bonuses*

Three witnesses provided testimony regarding Mr. Manuel's salary.  Mr. Huggins

testified that he believed that CEO compensation of 8 to 10 percent of the gross revenue of the

company is "ridiculous."[148]  He testified that he seconded a motion "to return [Mr. Manuel]'s

salary back to $175,000 effective March 18, 2011," and the motion was approved.[149]

Mr. Sullivan testified that in 2004 Mr. Manuel's salary as CEO was $100,000,[150] and that

in 2005 when he was presented with an employment agreement for Mr. Manuel's compensation

at $250,000 he and the other board members did not sign or approve it.[151]

Mr. Manuel also testified about his salary.  He acknowledged the exhibits as his

employment agreements: one in 2004 and a subsequent one in 2005.[152]  He described that he had

agreed to work the first year at half price.[153]  He noted that the employment agreements are not

---

[146]   *Id.* at 165.

[147]   *Id.*  Linda Taylor testified to a conversation between herself and Lauren Williams.  *Id.* at 299–301.
Counsel for Mr. Manuel raised a hearsay objection.  *Id.*  The Court took the objection under advisement.  For
relevant testimony to constitute hearsay, the testimony must be "offer[ed] in evidence to prove the truth of the matter
asserted in the statement."  *See* Fed. R. Evid. 801(c)(2).  VABB proffered Ms. Taylor's testimony to impeach Ms.
William's prior testimony, not to prove the truth of the matter asserted. Accordingly, the testimony does not
constitute hearsay.  Therefore, the Court overrules the objection.

[148]   *Id.* at 86.

[149]   *Id.* at 90–91.

[150]   *Id.* at 99.

[151]   *Id.* at 102–03.

[152]   *Id.* at 173–76; *see also* Manuel's Ex. H; Manuel's Ex. I.

[153]   Trial Tr. 175.

signed.[154]  He described that the originals had been lost or destroyed and only unsigned copies

remain.[155]  He explained that in the summer of 2010 the board of managers asked him to take a

reduction in his salary, and he agreed to reduce his salary from $250,000 to $175,000.[156]  As part

of this agreement, Mr. Manuel was to retire from VABB.[157]  This agreement provided that he

was to be paid the salary of $175,000 through the end of 2010, and then in January 2011 he

would be paid as a consultant until June 2011 based on an annual salary of $125,000.[158]  In

February 2011, the board approved hiring Mr. Manuel as CEO.[159]  During his testimony, Mr.

Manuel described a ledger that he created showing that Mr. Manuel received less than his salary

during the years 2006 through part of 2010.[160]

### Unauthorized Lease with KASA Properties

VABB did not present evidence showing that Mr. Manuel obligated VABB to a lease

with KASA Properties without board approval.  During the hearing, Mr. Huggins discussed a

lease with CBC[161] and also during the hearing Mr. Manuel described a lease with CBC.[162]

Neither witness testified that Mr. Manuel executed a lease unilaterally.  The Court has no

evidence showing that Mr. Manuel executed a lease without board approval.

---

[154]     *Id.* at 175–76.

[155]     *Id.*

[156]     *Id.* at 182.

[157]     *See id.* at 182–83.

[158]     *Id.* at 184; Manuel's Ex. K.

[159]     Trial Tr. 188.

[160]     *Id.* at 211–13.

[161]     *Id.* at 24–25.

[162]     *Id.* at 219–23.

## CONCLUSIONS OF LAW

### A.  Jurisdiction and the Court's Authority

The Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  This Court further concludes these matters are "core" bankruptcy proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B).  Venue is appropriate in this Court under 28 U.S.C. § 1409(a).

### B.  Objections to Claim

The first question for the Court is whether to sustain VABB's objections to claims and disallow claims 24, 25, and 26.  The starting point for answering the objections is Bankruptcy Code section 502 and Bankruptcy Rule 3002.  Pursuant to Bankruptcy Code section 502(a), a timely filed claim is allowed unless a party in interest objects.  11 U.S.C. § 502(a).  Once a party objects, a court must then determine the amount and validity of the claim.  11 U.S.C. § 502(b).  When determining the amount and validity in the face of such objection, the Court must follow the framework established by the Fourth Circuit in *Stancill v. Harford Sands, Inc. (In re Harford Sands, Inc.)*, 372 F.3d. 637 (4th Cir. 2004).  *In re Hilton*, No. 12-61102, 2013 WL 6229100, at *4–*5 (Bankr. W.D. Va. Dec. 2, 2013).  Under this framework, once a claimant properly files a proof of claim with all of the required supporting documentation, it is prima facie evidence of the claim's validity and the amount the debtor owes.  *Id.* (citing *Falwell v. Roundup Funding LLC (In re Falwell)*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); Fed. R. Bankr. P. 3001(c), (f)).  When a claim is based on a writing, a copy of the writing must be filed with the proof of claim.

Fed. R. Bankr. P. 3001(c)(1). If the claim is in compliance with the documentation requirements, it is prima facie evidence of the validity and amount.  Fed. R. Bankr. P. 3001(f).  Failure to provide documentation does not invalidate the proof of claim; it merely deprives the claim of prima facie validity.  *Hilton*, 2013 WL 6229100, at *5.  If the claimant files a prima facie valid claim, the burden shifts to the objecting party to "introduce evidence to rebut the claim's presumptive validity."  *Harford Sands*, 372 F.3d at 640.  Such evidence "must be sufficient to demonstrate the existence of a *true dispute* and must have probative force equal to the contents of the claim." *Falwell*, 434 B.R. at 784 (emphasis in original). The objecting party must provide evidence that negates at least one fact necessary to the claim's legal sufficiency.  *Harford Sands*, 372 F.3d at 640.  Finally, the burden of persuasion shifts back to the proponent of the claim if the objecting party is able to meet his burden.  *Id.*  At this stage, the proponent is required to prove the validity and amount of its claim by a preponderance of the evidence.  *Id.*  If the proponent is unable to meet this burden, the claim will be disallowed.  *See id.*  Only if the claimant fails to file the requisite documentation under Rule 3001 is it sufficient for the objecting party to assert a legal objection *without producing probative rebuttal evidence in support of the objection*.  *See Falwell*, 434 B.R. at 783–84; *see also Hilton*, 2013 WL 6229100, at *5 ("[E]ven without prima facie validity, the objecting party must have some other legally sufficient grounds for challenging the claim besides just failing to file the documentation.").

1.  <u>Claim 24</u>

Mr. Manuel timely filed proof of claim number 24 with attachments showing the notes supporting the debt.  Mr. Manuel's claim complies with Rules 3001(c) and 3003(c). The claim is presumptively valid based on the Fourth's Circuit directive in *Harford Sands*.  The LLC

therefore must present probative rebuttal evidence sufficient to negate at least one fact necessary to the claim's legal sufficiency. *Harford* Sands, 372 F.3d at 640.

The first basis on which the LLC objects to claim 24 is "claimant maintained the records regarding sums due." This assertion observes that the claimant has records upon which to base his claim. The assertion is not a denial of liability or a defense to liability. The LLC simply noted that the claimant who filed the proof of claim "maintained the records regarding the sums due."[163]

The second basis on which the LLC objects to the claim is that the "[c]laimant controlled debtor at time notes should have been paid." This allegation does not deny the liability or the amount of the debt. The objection admits that the note is owed ("should have been paid") and admits it is outstanding (was not previously paid). The objection does not identify when these notes should have been paid, whether they had come due, or whether they had been in default prior to the petition date.[164] The claimant's status as "controlling [the] debtor" is not a denial of liability or challenge to the amounts claims.

The third basis on which the LLC objects to the claim is "no documentation as to amounts due and amounts paid." This objection appears to suggest either that lack of documentation is sufficient grounds to contest liability or amounts claimed, or that it is an independent basis to permit disallowance of the claim.

The fourth basis cited in support of the objection to claim is that the claim should be subordinated to the claims of other unsecured creditors, based on the actions of Mr. Manuel.

---

[163]    A review of the proof of claim reveals that the notes range from 2006 – 2009 and show a total principal figure of $573,692.83. Proof Claim 24-1.

[164]    *See id.*

Subordination reorganizes the priority of distributions of all or part of the claim; it does not

disallow the claim.  *See, e.g.*, *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 699

(5th Cir. 1977) ("[E]quitable considerations can justify only the subordination of claims, not

their disallowance.").  The Court will address subordination of this claim separately.

The last basis cited by VABB in support of the objection to claim is recharacterization.  If

VABB is correct, then Mr. Manuel does not have a claim; he has an equity ownership interest.

Recharacterization does not disallow his claim; it acknowledges that the transaction is not a debt

or loan but an asset in the form of an investment as an equity ownership interest.  The Court will

address recharacterization separately.

None of the above objections—claimant maintained the records regarding sums due;

claimant controlled debtor at times notes should have been paid; no documentation as to amounts

due and owing—pertains to the claim's legal sufficiency and none of these allegations have been

supported by evidence.  The debtor did not deny that it received the loans pursuant to the notes

attached to claim number 24; the debtor did not provide any evidence that showing that the

amounts claimed in proof of claim 24 as due for these notes are incorrect; and the debtor did not

provide any evidence showing that these notes had been previously paid or satisfied.  The two

remaining challenges (subordination and recharacterization) are not objections to the allowance

of the claim.  For these reasons, the Court overrules the objection to claim 24.

2.  Claim 25

Like claim 24, Mr. Manuel timely filed claim 25 and included a note and the minutes

from board meetings on January 11, 2012, and on February 15, 2012, as supporting

documentation evidencing the existence of the liability.  This note sought to memorialize

VABB's liability to Mr. Manuel for his deferred salary along with unreimbursed expenses, unpaid bonuses, and interest.  Accordingly, Rule 3001 affords claim 25 prima facie validity, and under the *Harford Sands* framework, the burden shifts to VABB to present evidence to rebut this presumption.

VABB's objection asserts eight separate, albeit interrelated, objections to claim 25.  The Court will consider each objection in turn.

First, VABB asserts claim 25 is "based on a note dated February 15, 2012, at which time Virginia Broadband, LLC's operations were not sustainable."  This argument seems to suggest a debtor cannot indebt itself further when it is in dire financial straits.  The Court does not have to answer this question, however, because VABB's argument fails to recognize that the February 15 note did not *create* any new debt but merely served to *evidence* the validity and amount of a preexisting debt.  As mentioned above, and as VABB concedes, the February 15 note memorializes the amount of salary and expenses VABB owed to Mr. Manuel, meaning it served to confirm the fact a debt to Mr. Manuel already existed.  Even without this note, VABB would still owe Mr. Manuel for his deferred salary and other expense items.  Accordingly, this argument does not refute the presumption of validity.

Second, VABB asserts the basis for the note is not for a "debt" but instead is for "deferred salary, bonuses and other amounts allegedly owed [Mr. Manuel]."  VABB, however, does not explain why salary Mr. Manuel alleges VABB owes him is different from debt or why such a fact would make any amounts owed to him improperly claimed.  VABB adds that Mr. Manuel's salary was higher than that authorized by the board.  The Court has no evidence that the amounts claimed are higher than that authorized by the board.  According to Mr. Manuel's testimony and employment contracts, VABB authorized a salary of $250,000 per year, which he

agreed to reduce to $175,000 thereafter.  According to the board minutes and testimony of Mr. Huggins, VABB approved in March 2011 a "return [Mr. Manuel's] salary back to $175,000 annually effective March 18, 2011."  The Court has no other evidence establishing the CEO salary or compensation during the relevant period except for the testimony of Mr. Huggins expressing his personal belief that CEO compensation of eight to ten percent of the gross revenue of a company is "ridiculous."  The Court has no evidence proving the amounts included in claim 25 are inflated.

Third, the debtor argues, as it does against claims 24 and 26, that Mr. Manuel alone maintained records regarding the sums due that were the basis for the note.  Once again, this fact alone is not sufficient to refute the fact Mr. Manuel was entitled to compensation from VABB which he deferred or the amount thereof.  VABB must provide the Court with some reason to believe that because of Mr. Manuel's sole control of this information that, for example, he either fabricated the fact that VABB owed him money at all or that he claimed contrary to what was actually owed.  The debtor has provided the Court with no evidence to show this occurred.

Fourth, VABB asserts that portions of the amounts owed as evidenced in the February 15 note are barred by the statute of limitations.  In Virginia, an action to enforce an obligation based on a promissory note with a fixed due date must be brought within six years following the due date or, if payment is accelerated, six years thereafter.  Va. Code Ann. § 8.3A-118(a).  Since payment has not been accelerated nor has the note become due, the Court is unable to find that the obligation underlying the note is barred by the statute of limitations.  Since the evidence shows that the note was approved by the board, VABB is obligated under the note and the Court does not find that portions of that obligation are barred by the statute of limitations.

Fifth, Virginia Broadband asserts the February 15 note was not unanimously approved by the board of managers. The evidence shows that the board agreed VABB owed Mr. Manuel the amount claimed and resolved to reduce this debt to a note. According to Mr. Chang, the board authorized the creation of a note by a unanimous vote. The Court has no evidence to the contrary. Thus, the board had consented to paying Mr. Manuel the debt and approved the creation of the note. The Court is not persuaded that VABB's charge invalidates the claim or proves a defense to the liability.

Sixth, VABB objected on the grounds the note is "an attempt by [Mr. Manuel] to create obligation [sic] to him at time VABB was insolvent and under significant pressure from creditors."[165] This argument, however, is essentially the same as VABB's first argument, which the Court found was unpersuasive. Once again, the note itself did not create any obligation or liability, as it only memorialized the preexisting amounts owed to Mr. Manuel.

Seventh, the debtor argues the February 15 note should be subordinated to claims of the other unsecured creditors. This argument, however, has nothing to do with the validity or value of the claim, so the Court will not address it here.

Eighth, and finally, VABB argues the Court should recharacterize claim 25 to be an equity contribution rather than debt. Similar to VABB's argument for subordination, this argument does not call into question the validity or amount of this claim, however, so it is inapposite to the discussion here.

Accordingly, the Court does not believe VABB has carried its burden in rebutting the presumption of prima facie validity the Code and Rules afford claim 25. Mr. Manuel has provided a note evidencing this liability and minutes from a board meeting adopting the note. Without evidence of at least sufficient weight, the Court cannot find VABB has carried its

---

[165]      Objection to Claim 25-1, ECF Doc. No. 484.

burden in proving this claim is inappropriate.  Considering the evidence before the Court, it is

undisputed Mr. Manuel worked for the debtor during the period for which he claims he is owed

compensation; it is undisputed VABB employed Mr. Manuel; Mr. Manuel's testimony that he

deferred receipt of portions of this salary is uncontroverted; and it is undisputed that the board

authorized formalizing the note to Mr. Manuel for deferred salary and other indebtedness.  Based

on the evidence presented, the Court overrules the objection to claim 25.

    3.  <u>Claim 26</u>

    As discussed above, the Court applies the Fourth Circuit's burden-shifting framework

when determining an objection to claim.  If the claimant timely files a proper proof of claim with

the required documentation, it is presumptively valid as to sufficiency and amount. The objecting

party has the burden to present probative rebuttal evidence sufficient to call into question the

legal soundness of the liability or the amount.  Only once the objecting party has met this burden

does the ultimate burden of persuasion shift back to the claimant.

    VABB initially asserts that Mr. Manuel solely maintained records regarding sums due;

that the proof of claim provides no support for $32,000.08 claimed; and that the proof of claim

lacks proper and complete documentation.  VABB, however, does not deny the liability or the

amount.

    VABB next asserts that a "portion of sums claimed (if owed) are barred by the statute of

limitations."  The LLC does not identify the applicable statute of limitations or describe how the

"portion of the sums claimed" are barred.  In particular, VABB did not explain when the cause of

action to enforce collection of these "sums owed" arose in order to establish that Mr. Manuel is

barred from enforcing his cause of action.[166]  The VABB did not argue or provide evidence in support of this allegation.

Third, VABB asserts: "claimant controlled debtor at time sums allegedly due should have been paid."  The LLC raised this identical objection to claim 24. The LLC has not denied the liability and has not identified the time that the funds "should have been paid."

Next, the LLC supplemented its objection to claim 26 and asserted that the second amendment to claim 26 is untimely.  The LLC asserts that amendment adds new debt that is not related to the original claim.

With the exception of the charge of untimeliness, the LLC's objection to claim 26 is insufficient. The LLC has not challenged the liability or the amounts; the LLC never denied that the expenses were incurred or showed that they had been previously reimbursed.

As to the allegation of untimeliness, the LLC's objection is well taken. Mr. Manuel filed the original proof of claim for claim 26 for $83,818.87 on February 4, 2013, claiming as its basis "Business expenses encurred [sic] for the debtor."  On June 30, 2014, Mr. Manuel filed an amended proof of claim for $49,118.16, asserting as a basis both money loaned and expense reimbursement.  He again amended claim 26 ("claim 26-3") on August 11, 2014, claiming an additional $48,688.31 for salary in addition to the $49,118.16 "expense reimbursement loans" of the first amendment.

VABB's Supplemental Objection to Claim 26 requests that the Court disallow claim 26-3 because it was filed 18 months after the bar date and is therefore untimely.  Further, VABB

---

[166]      The Court observes that the proof of claim asserts that the expenses were incurred in 2012.  As such it appears the statute of limitations would have to be less than a year to be a defense to liability.

contends that the salary claim in the amendment should not be permitted, because it is "wholly unrelated to the original claim."[167]  Many courts employ a two-pronged test in determining whether to allow an amendment after the bar date.  *Steel Network, Inc. v. Torres (In re Steel Network, Inc.)*, No. 10-9019, 2010 WL 3000214, at *3 (Bankr. M.D.N.C. July 30, 2010).  The first prong addresses whether the amendment relates back to the original proof of claim, and the second prong looks at whether or not it would be equitable to allow the amendment.  *Id.* at *2.

The analysis under the first prong stems from Federal Rule of Civil Procedure 15(c)—applicable to adversary proceedings in bankruptcy cases through Federal of Bankruptcy Procedure 7015—which states that "an amendment . . . relates back . . . when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also* Fed R. Bankr. P. 7015.

"[C]ourts typically allow relation back of an amendment to a timely filed proof of claim 'where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'"  *In re Shotwell Landfill, Inc.*, No. 13-02590-8-SWH, 2014 WL 2809115, at *4 (Bankr. E.D.N.C. June 20, 2014) (quoting *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir. 1985)).  A bankruptcy court reviews an amendment to a claim to determine whether the amendment includes a new claim against the estate.  *See Int'l Horizons, Inc.*, 751 F.2d at 1216 ("[T]he court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment."); *see also In*

---

[167]     Debtor's Supplemental Objection to Claim 26, ECF Doc. No. 547.

*re Mitchell*, 116 B.R. 63, 64 (Bankr. W.D. Va. 1990); *In re A.H. Robins Co*., 118 B.R. 436, 440

(Bankr. E.D. Va. 1990).

The second prong of the test is an equitable consideration.  The determination whether to

allow an amendment to a timely filed proof of claim is an equitable one that is within the sound

discretion of the court.  *See Ronald J. & Dana Cohen Family L.P. v. City of Capitals, Inc.*, Nos.

87-1001, 87-1002, 829 F.2d 36, 1987 WL 44680, at *2 (4th Cir. Aug 28, 1987) (per curiam)

(unpublished).

First, the Court must determine whether Mr. Manuel's amendment of claim 26 to include

unpaid salary constitutes a new claim.  Second, if the Court determines that the salary claim is

not a new claim, the Court must then decide whether it would be equitable to allow the

amendment to relate back to the originally filed claim 26. The deadline for filing claims fixed by

this Court was February 13, 2013.  Mr. Manuel filed an amended proof of claim to include his

claim for unpaid salary in the amount of $48,688.31 on August 11, 2014.  Because claim 26-3

was filed after the bar date, the Court must determine whether the amendment relates back to the

original filing of the proof of claim or if it constitutes "a new claim under the guise of

amendment."

Under the circumstances, the Court concludes that the claim for unpaid salary is different

from the claim for reimbursement of business expenses.  Claim 26 as originally filed provided

VABB with information pertaining to Mr. Manuel's expense account.  This filing put VABB on

notice that it may be liable for the expenses asserted, and it triggered all of the defenses available

to VABB.  In fact, VABB did object to those expense reimbursement claims and specifically that

the claim erroneously included interest from a separate obligation, not an expense

reimbursement.  In response to that objection, Mr. Manuel filed an amended proof of claim which appears to be the amount owed to Mr. Manuel on the basis of the original claim asserted. After that, Mr. Manuel filed claim 26-3 to add a claim for unpaid salary.  The expense reimbursement portion of claim 26-3 remained unchanged, but Mr. Manuel added in new supporting documentation and evidence for unpaid salary that showed the stop payment of five checks.[168]  Mr. Manuel incurred the business expenses of claim 26 in 2012; the stop payments were issued in 2010.[169]  The circumstances surrounding the bases of the claims for the expenses and unpaid salary are quite different.

Since the expenses arose out of a separate set of "conduct, transaction[s], [and] occurrences" than the stop payments which are the basis of the salary claim, the Court concludes that claim 26-3 contains a new claim for unpaid salary that does not relate back to the claim as originally filed.  The Court therefore disallows $48,688.31, the portion of claim 26-3 that is for unpaid salary, because it is a new claim against the estate which was filed after the deadline for filing claims.

### C.  Equitable Subordination and Recharacterization

Equitable subordination is distinct from recharacterization. Equitable subordination is a remedy. If the claimant has a valid claim and engaged in conduct that caused harm, a court may impose the remedy of subordination to the extent necessary to offset the harm to the creditors. Subordination causes a change in the order of payment or order of priority of that portion of the claim, up to the entire claim, to the extent necessary to remedy the harm.  *Fairchild Dornier*

---

[168]      Proof of Claim 26-3.

[169]      *See id.*

*GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.*), 435

F.3d 225, 231 (4th Cir. 2006). Recharacterization on the other hand is not a remedy. If an

investor made equity infusions to a company but labeled this investment a loan, a bankruptcy

court has the authority, as part of the claims allowance process, to look beyond the label in order

to determine that the transaction is not a loan and the party who made the loan is not a creditor.

*See id.* at 232. *See generally* Sprayregen, Friedland, Brighton, & Bianca, *Recharacterization of*

*Debt to Equity: An Overview, Update, and Practical Guide to An Evolving Doctrine*, 2004

Norton Ann. Surv. of Bankr. L. 1. A court therefore may "recharacterize" the debt as equity, and

restore the "creditor" to equity security holder. If so, as an equity security holder, this person will

not receive payment until all debts of the company are satisfied. *See Dornier*, 435 F.3d at 231.

### 1. Equitable Subordination

Section 11 U.S.C. § 510(c) gives bankruptcy courts authority to equitably subordinate a

claim:

> [A]fter notice and a hearing the court may –
>
> (1) under principles of equitable subordination, subordinate for
> purposes of distribution all or part of an allowed claim to all or part
> of another allowed claim or all or part of an allowed interest to all
> or part of another allowed interest . . . .

11 U.S.C. § 510(c).

The Fourth Circuit Court of Appeals has recognized that "[a] creditor's claim can

generally be subordinated under 11 U.S.C. § 510(c) if three circumstances are satisfied: (1) the

claimant engaged in inequitable conduct; (2) that conduct injured other creditors; and (3)

subordination is consistent with other bankruptcy law." *Anderson & Assocs., P.A. v. S. Textile*

*Knitters de Honduras Sewing Inc. (In re S. Textile Knitters*), 65 Fed. App'x 426, 439 (4th Cir.

2003) (citing *EEE Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.)*, 934 F.2d 1315, 1320 (4th Cir. 1991); *United States v. Noland*, 517 U.S. 535, 538–39 (1996)).

To subordinate, the Court must find facts that show each of these circumstances. First, Mr. Manuel must have engaged in inequitable conduct.

### Inequitable Conduct

"'Inequitable conduct' for subordination purposes encompasses three categories of misconduct: '(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego.'" *Sender v. Bronze Grp., Ltd. (In re Hedged-Invs. Assocs., Inc.)*, 380 F.3d 1292, 1298 (10th Cir. 2004) (quoting *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1467 (5th Cir. 1991)). VABB contends Mr. Manuel breached his fiduciary duty and as such has engaged in inequitable conduct for purposes of equitable subordination.[170]

VABB is a limited liability company organized under the Virginia Limited Liability Company Act (the "VLLCA").[171] The Court therefore will examine the alleged breaches of fiduciary duty under the provisions of VABB's operating agreement and the provisions of the VLLCA.

---

[170] In addition, in its opening argument, VABB's counsel informed the Court that undercapitalization was a category of inequitable conduct asserting that "we will have evidence as to that as well." Trial Tr. 15, Sept. 16, 2014. Yet, VABB did not provide the Court with any evidence of undercapitalization. Additionally, this Court agrees with the Seventh Circuit that "undercapitalization alone, without evidence of deception about the debtor's financial condition or other misconduct, cannot justify equitable subordination of an insider's debt claim." *In re Lifschultz Fast Freight*, 132 F.3d 339, 349 (7th Cir. 1997).

[171] *See* First Amended and Restated Operating Agreement, Manuel's Ex. J, art. I.

Under the VLLCA, a limited liability company may be either member managed or manager managed.  Va. Code Ann. § 13.1-1022(A).  VABB is a manager-managed limited liability company.[172]

The Supreme Court of Virginia has stated that "[w]hether an act constitutes a breach of fiduciary duty will depend on the circumstances of each case."  *Gowin v. Granite Depot, LLC*, 634 S.E.2d 714, 722 (Va. 2006) (citation omitted).  Further, in order for a court to find a breach of a fiduciary duty, a court must first establish that the fiduciary duty allegedly breached exists.

### *Duty of Loyalty*

According to VABB's Memorandum, Mr. Manuel's breaches of fiduciary duty "include his self-dealing with the Debtor, including arranging for the signing of the 1.2 million dollar note that is the basis of claim 25-2 and his setting of an excessive salary without board approval."[173]

Self-dealing is a violation of the duty of loyalty.  "A Virginia corporation's directors and officers owe a duty of loyalty both to the corporation and to the corporation's shareholders."  *WLR Foods, Inc. v. Tyson Foods, Inc.*, 869 F. Supp. 419, 421 (W.D. Va. 1994).  Although the Virginia Stock Corporation Act does not expressly state that a director of a corporation has the duty of loyalty, it does require that directors avoid conflict of interest.  *See* Va. Code. Ann. § 13.1-691.  By contrast, neither the VLLCA nor the common law imposes a duty of loyalty on members or managers of Virginia limited liability companies.  A duty of care may be inferred from Virginia Code § 13.1-1024.1(A), but the allegation of self-dealing as a breach of fiduciary duty derives from the duty of loyalty.  Without a specific statutory or caselaw authority, or

---

[172]     *See id.* at art. V.

[173]     Debtor's Memorandum in Support of Confirmation of Its Second Amended Plan of Reorganization Dated March 13, 2014 and Objections to Claims of Warren Manuel 16, ECF Doc. No. 512.

provision in the governing operating agreement for the LLC, the Court cannot impose this duty

of loyalty upon a manager or member of an LLC; accordingly the Court cannot conclude that

Mr. Manuel breached the duty to refrain from self-dealing because the Court cannot find that

such duty existed.

Even if the Court were to find that the duty to refrain from self-dealing existed, the Court

is not persuaded that Mr. Manuel breached that duty based on the specific allegations and

evidence made by VABB.  First, VABB contends that a breach occurred when Mr. Manuel

"arrang[ed] for the signing of the 1.2 million dollar note."  Under VABB's operating agreement,

the board of managers was authorized to "approve or disapprove of . . . the incurring by the

Company of any indebtedness for borrowed money in excess of $50,000."[174]  According to the

minutes of a meeting of the board of managers in January 2012, VABB resolved that "the

Company would formalize agreements for the loans granted to the Company by . . . Mr. Warren

Manuel in the amount of $1,194,649.00."  The board of managers had authority to and did in fact

approve the creation of the note at issue.  When the note was questioned at a subsequent meeting

on April 25, 2012, the board resolved that no changes would be made to the note.

Second, VABB asserts that Mr. Manuel breached his duty to refrain from self-dealing by

setting an "excessive salary without board approval."  The operating agreement grants the board

of managers the authority to fix the compensation of its officers.  The Court has no evidence that

the board had disapproved of his salary.  The Court has testimony from Mr. Sullivan that the

original salary was approved at $100,000 and that in 2005 when he was presented with an

employment agreement for Mr. Manuel's compensation at $250,000 he and the other board

---

[174]      First Amended and Restated Operating Agreement, Manuel's Ex. J, art. 5.8(b)(iv).

member (Mr. Chapman) did not sign or approve it.[175]  The Court has testimony from Mr. Manuel

that the employment contract at $250,000 was signed by himself and Mr. Chapman and that the

signed version of the agreement has been lost or destroyed and only an unsigned copy

remains.[176]  In addition, the Court has evidence that the board approved a motion "to return [Mr.

Manuel's] salary back to $175,000, effective March 15, 2011."[177]  Based on the evidence, the

Court concludes that is it more likely true that Mr. Manuel's salary was greater than $100,000

after 2004, and that it is more likely true that the salary was at least $175,000 beginning March

15, 2011. The Court has no evidence from which to conclude that any salary is "excessive," or

that any salary was set unilaterally by Mr. Manuel.  Furthermore, the Court does not find any

limitation on the amount of compensation that may be paid to any employee of VABB, much

less any limitation on Mr. Manuel's salary, in the company's operating agreement nor under the

laws of the Commonwealth.

*Duty of Care*

VABB further asserts that Mr. Manuel breached his fiduciary duty through inaction,

specifically "including his failure to pay personal property taxes, his failure to obtain a proper

audit of the company and his failure to even respond to business mail directed to the

company."[178]  The Court construes these assertions as allegations Mr. Manuel breached the

fiduciary duty of care.

---

[175]     Trial Tr. 102–03, Sept. 16, 2014.

[176]     *Id.* at 175–76.

[177]     *Id.* at 90–91.

[178]     Debtor's Memorandum in Support of Confirmation of Its Second Amended Plan of Reorganization Dated
March 13, 2014 and Objections to Claims of Warren Manuel 16, ECF Doc. No. 512.

Unless an operating agreement expresses otherwise, the general duty of care is found in the VLLCA which provides that "[a] manager shall discharge his or its duties as a manager in accordance with the manager's good faith business judgment of the best interests of the limited liability company." Va. Code Ann. § 13.1-1024.1(A). The operating agreement contains a clause "Duties of Managers." This clause states that the Managers shall devote such time, effort, and skill to the Company's business affairs as they deem necessary and proper for the Company's welfare and success.[179] The clause is consistent with Virginia Code § 13.1-1024. This standard of conduct is a subjective one that mirrors the language of the Virginia Corporate Stock Act § 13.1-690(A), which "is not measured against the objective standard of what a reasonable person would do in similar circumstances. Rather, the proper inquiry focuses on the subjective beliefs of the director and the director's use of a decision-making process that would produce a defensible business decision." *Matson v. Alpert (In re LandAmerica Fin. Grp., Inc.)*, 470 B.R. 759, 797 (Bankr. E.D. Va. 2012) (citing *WLR Foods, Inc. v. Tyson Foods, Inc.*, 155 F.R.D. 142, 145–46 (W.D. Va. 1994), *aff'd*, 65 F.3d 1172 (4th Cir. 1995)).

VABB claims that Mr. Manuel breached his duty of care by failing to pay personal property taxes, failing to obtain an audit, and failing to respond to business mail. Based on the testimony of Mr. Smith, Mr. Andrew, Ms. Williams, Mr. Manuel and Mr. Chang, the Court concludes that Mr. Manuel was not solely responsible for these activities. Based on the evidence, the Court cannot find particular actions performed by Mr. Manuel that directly caused these troubles. Furthermore, if Mr. Manuel had a subjective good faith business judgment belief that his actions were in the best interest of the LLC, the Court cannot conclude that he breached a fiduciary duty found in Va. Code § 13.1-1024.1, even if Mr. Manuel's judgment was deficient.

---

[179] First Amended and Restated Operating Agreement, Manuel's Ex. J, art. 5.14.

The Court does not find that VABB has met its burden of proving the violation of the fiduciary duty of care. *See* Va. Code Ann. § 13.1-1024.1(C) ("A person alleging a violation of this section has the burden of proving the violation.").

### Other Alleged Duty

Finally, at the hearing, VABB argued that Mr. Manuel breached his fiduciary duty "to ensure the best return to the creditors."[180]  VABB failed to provide any evidence or support for the fact that such a fiduciary duty exists.[181]

### Harm

The second element of the test for equitable subordination is harm or unfair advantage. This requires a finding of injury or harm to other creditors.  *See Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 532 F.3d 355, 361 (5th Cir. 2008) (reversing a bankruptcy court's subordination of insider claims because the bankruptcy court did not make a finding of harm

---

[180]    To the extent the creditors are other members of the LLC, Mr. Manuel does not have an independent fiduciary duty to the LLC members.  *See Credit Experts, LLC v. Santos (In re Santos)*, No. 11-17783, Adv. No. 11-01680, 2012 WL 2564366, at *6 (Bankr. E.D. Va. July 2, 2012).

[181]    The Court construes VABB's general argument during the hearing as applying the theory of "deepening insolvency" as a basis to equitably subordinate or recharacterize the claims of Mr. Manuel. Within Virginia, however, no court has recognized the theory of deepening insolvency as a tort.  The court in *James River Coal Company* suggested that the Virginia Supreme Court would not adopt the theory of deepening insolvency as a tort:

> Indeed, it would fundamentally transform Virginia law . . . .  No court applying Virginia law has ever recognized an independent cause of action premised solely upon a company's economic decline.  Virginia law does not require a financially challenged company to abruptly windup its business affairs and liquidate its assets.  The Board of Directors must remain free to exercise its good faith business judgment that will allow it to pursue strategies the board views as sound to turn the company around.

*Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 179 (Bankr. E.D. Va. 2007) (footnote omitted). The Court agrees with this analysis and notes that the Supreme Court of Virginia has still not ruled otherwise.  *See also Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 532 F.3d 355, 363 n.17 (5th Cir. 2008) (listing various courts who disagree with the theory of deepening insolvency); *Anderson Gustafsson Advokatbyra, KB v. eScrub Systems Inc.*, No. 1:10-cv-632, 2011 WL 677053 (E.D. Va. Feb. 15, 2011) ("Like Delaware, it is unlikely that Virginia would recognize a claim for 'deepening insolvency.'").

resulting from the unfair advantage).  Equitable subordination is remedial and not punitive.  *See, e.g.*, *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700–01 (5th Cir. 1977); *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 69 (Bankr. D. Del. 2002) ("[C]laims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct.").  Put another way, a party bringing an action may only receive what the injured party could have received as a remedy under its cause of action.  *Anderson & Assocs., P.A. v. S. Textile Knitters de Honduras Sewing Inc. (In re S. Textile Knitters)*, 65 Fed. App'x 426, 439 (4th Cir. 2003).

Merely demonstrating that Mr. Manuel provided loans to the LLC is not enough to justify equitable subordination of those loans.  The Court cannot equitably subordinate this claim without evidence that VABB or its creditors have been harmed by Mr. Manuel's conduct.  *See In re SI Restructuring, Inc.*, 532 F.3d at 364 (refusing, on appeal, to subordinate a claim based on a loan when "the bankruptcy court made no finding that [the transaction] with the debtor caused harm to either the debtor or the unsecured creditors").  VABB advocated that there was harm to creditors, yet VABB failed to identify the harm to the creditors or provide any factual proof of harm.  The Court has no evidence that Mr. Manuel did not loan money to the LLC, or did not pay expenses of the LLC or defer receipt of his salary. Based on the evidence the Court concludes that Mr. Manuel did loan money to the LLC, did pay expenses of the LLC and did defer receipt of his salary.  The Court has no evidence that the loans made were unnecessary or not used for the benefit of the LLC, that the LLC expenses paid by Mr. Manuel had not been incurred by the LLC or for the benefit of the LLC, and that the salary was not deferred or not incurred by Mr. Manuel.  The Court cannot conclude that these obligations (the loans, cash to cover expenses, and salary) would not have been owed by the LLC to some creditor if not Mr.

Manuel.  Based on the record the Court cannot conclude that by loaning money to the LLC,

paying expenses of the LLC, and deferring his salary, Mr. Manuel put the creditors of the LLC in

a worse position than they otherwise would have been had Mr. Manuel not taken these actions at

the time these actions occurred.

### Not Inconsistent with the Bankruptcy Code

The third element of equitable subordination requires that subordination of the claim is

not inconsistent with the Bankruptcy Code.  Although the Bankruptcy Code authorizes equitable

subordination, the Code does not direct its application.  The Code merely codifies the long-

standing equitable remedy.  *United States v. Noland*, 517 U.S. 535, 539 (1996) ("Although

Congress included no explicit criteria for equitable subordination when it enacted § 510(c)(1),

the reference in § 510(c) to 'principles of equitable subordination' clearly indicates congressional

intent at least to start with existing doctrine."). To avoid using equitable subordination to remedy

every unfair result in bankruptcy, courts are confined to apply equitable subordination consistent

with the Bankruptcy Code.  For example, a bankruptcy court may not conclude merely the

existence of an inequitable result is sufficient to justify subordination.  *See id*. at 539

("[A]lthough [a bankruptcy court] is a court of equity, it is not free to adjust the legally valid

claim of an innocent party who asserts the claim in good faith merely because the court perceives

that the result is inequitable." (quoting DeNatale & Abram, *The Doctrine of Equitable

Subordination as Applied to Nonmanagement Creditors*, 40 Bus. Law. 417, 428 (1985)).

### Burden of Proof

The party seeking equitable subordination has the burden of proof. *Anaconda-Ericsson,

Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 29 B.R. 139, 168–69 (Bankr. E.D.N.Y. 1983);

*Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)*, 126 B.R. 63, 71 (B.A.P. 9th Cir.

1991). The burden shifts to Mr. Manuel if VABB presents material evidence of inequitable

conduct. To prove inequitable conduct, VABB must show a substantial factual basis for

subordination. *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 701 (5th Cir. 1977)

("To constitute the type of challenge contemplated by the Court, an objection resting on

equitable grounds cannot be merely formal, but rather must contain some substantial factual

basis to support its allegation of impropriety."). If VABB meets this burden, then the burden of

proof shifts to Mr. Manuel to prove the fairness of the transactions. *Summit Coffee Co. v.

Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2 F.3d 128, 131 (5th Cir. 1993) ("[T]he claims

arising from the dealings between the debtor and its fiduciaries must be subjected to rigorous

scrutiny, and, if sufficiently challenged, the burden shifts to the fiduciary to prove both the good

faith of the transaction and its inherent fairness.").

Therefore, if VABB establishes through factual evidence that Mr. Manuel engaged in

inequitable conduct that caused harm to VABB or its creditors, then the burden shifts to Mr.

Manuel to show the transaction was fair in light of the circumstances. At this juncture, VABB

did not demonstrate a sufficient factual basis for this Court to find inequitable conduct or harm;

VABB did not meet its initial burden of proof to warrant equitable subordination. The burden,

therefore, did not shift to Mr. Manuel to show good faith or fairness.

2. <u>Recharacterization</u>

On August 29, 2014, VABB filed Debtor's Supplemental Objection to Claims 24, 25 &

26 requesting that the Court recharacterize claims 24, 25, and 26 as equity.

A bankruptcy court has the authority to recharacterize a claim pursuant to its inherent authority under Section 105(a) of the Bankruptcy Code.  *See Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc*.), 453 F.3d 225, 233 (4th Cir. 2006) ("[W]e reject [the] argument that a bankruptcy court may only exercise its power to recharacterize a claim by disallowing the claim under § 502(b) or equitably subordinating the claim under § 510(c).").  The purpose of a bankruptcy court's recharacterization authority is to assign the proper priority status to an allowed claim.  *See id*. ("[T]he exercise of this power to recharacterize is essential to the implementation of the Code's mandate that creditors have a higher priority in bankruptcy than those with an equity interest." (citation omitted)).  Because a company must satisfy other outstanding obligations prior to repaying capital contributions, the practical effect of recharacterization is total subordination of a claim that is determined to be a contribution to equity.  *See* 11 U.S.C. § 726.  In this case, the practical effect of recharacterization of Mr. Manuel's claims would be the same as disallowing the claims, because equity interests under the proposed Chapter 11 plan will not receive any distribution.[182]

The Fourth Circuit has approved the eleven factors enumerated by the Sixth Circuit in *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726 (6th Cir. 2001), as appropriate considerations when determining whether a court should recharacterize a claim as equity rather than debt.  *Dornier Aviation*, 453 F.3d at 233.  Those factors which a bankruptcy court may consider include:

> (1) the names given to the instruments, if any, evidencing the indebtedness;
>
> (2) the presence or absence of a fixed maturity date and schedule of payments;
>
> (3) the presence or absence of a fixed rate of interest and interest payments;

---

[182]    *See* Second Amended Plan of Reorganization 16, ECF Doc. No. 400 (unconfirmed).

(4) the source of repayments;

(5) the adequacy or inadequacy of capitalization;

(6) the identity of interest between the creditor and the stockholder;

(7) the security, if any, for the advances;

(8) the corporation's ability to obtain financing from outside lending institutions;

(9) the extent to which the advances were subordinated to the claims of outside

creditors;

(10) the extent to which the advances were used to acquire capital assets; and

(11) the presence or absence of a sinking fund to provide repayments.

*AutoStyle Plastics*, 269 F.3d at 749–50.[183]   Additional factors that courts have considered include

the intent of the parties, whether the holder of a note has the right to enforce payment, the extent

of participation in management flowing as a result of the contribution, and the debtor's failure to

repay the debt on the due date or to seek postponement of the debt.  *See Sender v. Bronze Grp.,*

*Ltd. (In re Hedged-Invs. Assocs., Inc.*), 380 F.3d 1292, 1298 (10th Cir. 2004).

    "None of these factors is dispositive and their significance may vary depending upon

circumstances." *Dornier Aviation*, 453 F.3d at 234 (quoting *Hedged-Invs. Assocs.*, 380 F.3d at

1298–99)).  As the Fourth Circuit noted, "[t]his test is a highly fact-dependent inquiry that will

vary in application from case to case." *Id.*  A bankruptcy court weighs these factors, while

considering the circumstances of a particular case, to determine the true substance of a

transaction.  *See, e.g.*, *Dornier Aviation*, 453 F.3d at 232; *AutoStyle Plastics*, 269 F.3d at 747;

*Hedged-Invs. Assocs.*, 380 F.3d at 1297.

---

[183]     Although the court in *AutoStyle Plastics* was dealing with an incorporated entity, the Court holds these factors applicable to limited liability companies.  In this recharacterization analysis, references in quotations to "corporation," "stock," "stockholder," and "shareholder" are intended to reflect analogous application to limited liability companies, units, and members.

"The determination of whether advances to a corporation are loans or capital contributions depends on whether the objective facts establish an intention to create an unconditional obligation to repay the advances." *Roth Steel Tube Co. v. I.R.S.*, 800 F.2d 625, 630 (6th Cir. 1986) (making a determination in the context of the Internal Revenue Code). The Court first will weigh the factors which highlight the express terms of the transactions, then will consider the circumstances surrounding the transactions, and finally will evaluate VABB's treatment of the money advances.

### Expression of the Transaction

The parties are sophisticated entities. The Court gives weight to how these parties deliberately formalized the obligation. The Court, therefore, will examine the contents of and omissions from the documentary evidence to determine whether the parties intended to create an unconditional obligation to repay a loan or intended to treat the advances as an equity contribution.

The presence of notes weighs against recharacterization, because the parties have endeavored to memorialize the debt through an enforceable instrument of a form typically associated with a loan. *AutoStyle Plastics*, 269 F.3d at 750. The eleven notes evidencing claim 24 are all entitled "Demand Promissory Note." Each of the eleven notes is accompanied by a resolution of VABB authorizing the issuance of the notes in exchange for the loans. Each resolution is appropriately signed in accordance with the company's operating agreement. The note accompanying claim 25 was given the name "Promissory Note." In addition, in January 2012, the board of managers adopted the resolution that "the Company would proceed to formalize agreements for the loans granted to the Company by Mr. Tom Huggins in the amounts

of $15,000 and $20,000 and Mr. Warren Manuel in the amount of $1,194,649.00." Claim 26,

however, has no instrument evidencing the indebtedness.

A fixed maturity date and a schedule of payments are more indicative of loans than

capital contributions. The lack of a schedule of payments is not fatal under this factor; otherwise

demand notes would inherently weigh in favor of equity. As the Sixth Circuit concluded, "the

use of demand notes along with a fixed rate of interest and interest payments is more indicative

of debt than equity." *AutoStyle Plastics*, 269 F.3d at 750.

Each demand note evidencing claim 24 contains a maturity date ten years after the

issuance of the note. The promissory note evidencing claim 25 contains the following provision:

> Maker shall pay the principal and accrued interest under this Note
> as follows: (1) on June 1, 2012, Maker shall pay all accrued
> interest under this Note, and on the first day of each month
> thereafter up to and including Holder Retirement Date  or
> December 1, 2012, whichever occurs first, Maker shall pay an
> amount equal to all accrued interest under this Note as of each such
> payment date; and (2) on the first day of the month following
> Holder Retirement Date or January 1, 2013, whichever occurs first,
> the outstanding principal balance and all accrued and unpaid
> interest shall be amortized over a ten-year period using the annual
> interest rate of 6.25% . . . and Maker shall pay Holder equal
> payments of principal and interest in equal monthly installments
> for a period of 120 months . . . .

Although no fixed maturity date is expressly stated because of uncertainty concerning the Holder

Retirement Date, the maturity date would necessarily be a date between February 15, 2022, and

January 1, 2023. Similarly, the schedule of payments is easily determined but again relies on a

trigger date which is contingent on the Holder Retirement Date. The heart of this factor seems to

be if there is a date upon which the holder of the note may legally enforce repayment—which is

indicative of genuine indebtedness—or if the maker has the option to repay the note when it has the funds to do so, that is when it is profitable—which is indicative of an equity contributions.

A fixed rate of interest or interest payments is more indicative of loans. *See AutoStyle Plastics*, 269 F.3d at 750. Each note evidencing claim 24 provides for "interest at the rate charged Warren P. Manuel by the Middleburg Bank during the term of this loan, or Nine and nine/tenths (9.9%) per cent per annum [whichever is lower]." The promissory note evidencing claim 25 is at the annual rate of 6.25%. VABB admits that there is a fixed rate of interest but asserts that there were no interest payments.

If the holder of a note has the right to enforce payment, then that characteristic favors finding genuine indebtedness. No evidence has been presented that Mr. Manuel did not have the right to enforce any of the notes. The demand notes of claim 24 grant Mr. Manuel the right to enforce payment on demand. The promissory note of claim 25 allows Mr. Manuel to make demands or pursue legal remedies upon default and even grants Mr. Manuel the option to accelerate the payment of the note on February 15, 2015.

If the intent of the parties is that advances be treated as capital contributions, the parties are likely to agree to subordinate the claim for such advances to the claims of outside creditors. The presence of subordination agreements, therefore, is indicative of equity, while the absence of a subordination clause would weigh in favor of treating a claim as genuine indebtedness. There is no evidence of any such agreement.

Further, an entity advancing funds intended to be an equity contribution would expect to have that contribution reflected in some way by the company. If, as a condition of advancing funds, the lending party increases the extent of participation in management, obtains a larger

percentage of membership, or receives additional voting rights, a bankruptcy court is likely to determine that the advance is an equity contribution and recharacterize the debt.  There is no condition in any of these transaction documents and resolutions, and VABB did not assert that any such condition existed.

"If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution."  *AutoStyle Plastics*, 269 F.3d at 751.  This appearance may be tempered by the presence of liens securing the debt.  *See id.*  The receipt of a security interest in exchange for an advance weighs in favor of determining that a particular advance is a loan.  The parties agree that the source of repayment was from VABB, but neither party presented evidence of specific sources of repayment that would tip this factor in favor of either debt or equity.  The one factor that weighs in favor of equity is that Mr. Manuel did not receive any security interest in exchange for his advances.  One earmark of an arm's length transaction would be the taking of a security interest to secure repayment, but Mr. Manuel did not take a security interest.

Finally, the creation of a sinking fund tends to evidence that an advance was a loan. There was no sinking fund established for the repayment of the debts asserted in claims 24, 25, or 26, but there is no evidence of sinking funds established for any other indebtedness of VABB. As such, this factor under the circumstances of this case should carry little weight as VABB did not utilize sinking funds for what it does consider genuine indebtedness.  If VABB was in the habit of establishing sinking funds for their debts, then the absence of such a fund for Mr. Manuel's claims would indicate that the funds advanced were capital contributions.  The absence, however, merely is in line with what appears to be VABB's standard operating procedure when dealing with debt.

*Context of the Transaction*

When considering whether to recharacterize alleged debt as equity, a court must take into account factors which are not made explicit in the documentary evidence of the particular transaction.  The Court now turns to the circumstances under which Mr. Manuel advanced the funds.

Lending to an inadequately capitalized entity favors recharacterization of debt as an equity contribution.  "Generally this factor is relevant when a corporation is started by the shareholders with a minimal amount of capital who then make a large loan of money to the newly formed corporation, and thus the relevant time for determining whether capitalization was adequate is generally at the corporation's creation." *In re Cold Harbor Assocs., L.P.*, 204 B.R. 904, 917 (Bankr. E.D. Va. 1997).  A court, however, may look at capitalization either at the time of formation of an entity or at the time the transfer at issue was made.  *See AutoStyle Plastics*, 269 F.3d at 751; *Roth Steel*, 800 F.2d at 630.

The parties agree that VABB was formed with over five million dollars of equity.  VABB did not provide any evidence, or argument, that the company was not adequately capitalized when formed.  This would weigh in favor of treating the claims as debts.  On the other hand, if the Court considers the capitalization of VABB at the time it issued the instrument supporting claim 25 or at the time the expenses that support claim 26 occurred, the result may be different.  VABB highlights the declining financial condition of the company at the time Mr. Manuel advanced funds.  In Mr. Manuel's words, "Things were tight."  This factor weighs in favor of recharacterization.  Yet, this factor cannot be simply dispositive for the same reasons undercapitalization is not sufficient by itself to justify equitable subordination: if courts recharacterized debt each time an insider made a loan to a struggling company, no insider (or

perhaps any creditor) would lend financial assistance to a distressed company for fear of punitive action by a bankruptcy court.  For these reasons, the Court does not place substantial weight on the deteriorating financial situation at the time the financial assistance was rendered.

One critical question is whether the particular transaction would have been attractive to potential outside lenders.  "[T]he fact that no reasonable creditor would have acted in the same manner is strong evidence that the advances were capital contributions rather than loans." *AutoStyle Plastics*, 269 F.3d at 752.

The notes accompanying claim 24 were issued over a period of time, the first being issued on November 14, 2006, and the eleventh being issued on June 27, 2007.  The total amount of principal on the face of the notes is $573,692.83.  According to its proof of claim, Middleburg Bank issued a loan to VABB in the principal amount of $1,860,000 on March 1, 2006.[184]  The terms were subsequently modified periodically from 2007 through 2011.  The fact that an outside entity was willing to lend $1.86 million during the same period that Mr. Manuel advanced funds seems to suggest that some outside financing was available.

The note accompanying claim 25 was issued in the principal amount of $1,194,649 on February 15, 2012, to be paid over ten years at 6.25% interest.  VABB issued a promissory note to EVB in the principal amount of $590,000 on April 12, 2011, to be paid over five years at 5.5% interest.[185]  Although VABB was unable to obtain financing through RUS during this time, it appears that some outside financing did occur; therefore the Court does not find that no outside financial institutions would be willing to make some loans to VABB.  Furthermore, other

---

[184]     *See* Proof of Claim 15-1.

[185]     *See* Proof of Claim 3-1.

insiders made loans to VABB during this time on similar terms and VABB characterizes these loans as debts.

When considering insider contributions, a court should look at the identity of interests between the creditor and his membership interest.  The advance of funds in proportion to one's stock ownership evidences a capital contribution, while a disproportionate advance weighs in favor of an advance as a loan.  Courts finding this factor to weigh heavily in favor of recharacterization have done so in situations in which multiple lenders contributed capital in proportion to their respective equity interests.  *See, e.g.*, *Cold Harbor Assocs.*, 204 B.R. at 918–19.  "A sharply disproportionate ratio between a stockholder's percentage interest in stock and debt is, however, strongly indicative that the debt is bona fide."  *Roth Steel*, 800 F.2d at 630 (quoting *Estate of Mixon v. United States*, 464 F.2d 394, 409 (5th Cir. 1972)).

There is no evidence to show that Mr. Manuel and other members were contributing capital in proportion to their membership interests.  In fact, Mr. Manuel's claims are the only claims that VABB asserts need to be recharacterized as equity, yet Mr. Manuel does not own 100% of the LLC membership interests.  Accordingly it is difficult for the Court to apply this factor or provide it significant weight, particularly when other members made loans and contributions to the LLC and yet VABB does not subject their claims to recharacterization.  Further, without evidence of gaining more control of the company or receiving a higher percentage of ownership, the Court is unable to see why a minority member would contribute such large amounts to the LLC with the intent of it being treated as a contribution to equity.

*VABB's Behavior Regarding the Advances*

56

The Court will next consider the extent to which the advances were used to acquire capital assets.[186]  "Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness."  *AutoStyle Plastics*, 269 F.3d at 752.

Claim 24 reflects certain loans made by Mr. Manuel based in part on loans he obtained from outside sources and paid to VABB.[187]  The expense reports used to determine the claim 25 note include payments for supplies, mileage, parking fees, repairs, marketing supplies, cell phone bills, credit card interest, loan repayment, postage, hotel rooms, and the occasional lunch.  The Court recognizes that a few of the items, for example "Equipment" from "Sys Ctr" in amount of $216.15 or "VABB Equipment" from "Tessco" for $4,644.96, may be considered "capital assets," but the overwhelming majority of the money was used for the daily operating expenses.[188]

Claim 26 is for reimbursement of expenses from 2012.[189]  Similar to claims 24 and 25, a review of the expense reports attached to claim 26 show that the expenses included, among other

---

[186]        A "capital asset" is a broad term.  In the taxation context from which these recharacterization factors derived, in general "the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include [among other items] . . . property used in his trade or business, of a character which is subject to the allowance for depreciation provided in [26 U.S.C. §] 167, or real property used in his trade or business; . . . accounts or notes receivable acquired in the ordinary course of trade or business for services rendered . . . [and] supplies of a type regularly used or consumed by the taxpayer in the ordinary course of a trade or business of the taxpayer."  26 U.S.C. § 1221(a).

VABB has no real property and the summary of schedules lists only $1,257,293.01 of personal property. According to Schedule B, of that amount, customer receivables are $140,888.78, automobiles are $37,700, office equipment and supplies is $6,024.05, and machinery , fixtures, equipment and supplies used in business are $1,000,000.  It appears to the Court that VABB had very few capital assets.  The Court is not persuaded that the funds advanced by Mr. Manuel were for the purpose of purchasing capital assets.

[187]        *See* Trial Tr. 198–200, 227–28, Sept. 16, 2014; Proof of Claim 24; Manuel's Ex. E.

[188]        *See* Manuel's Ex. G.

[189]        Since the Court has sustained the objection to salary portion of 26, it need not be discussed here.

items, mileage to and from different locations, cell phone bills, credit card interest, Intuit

financial and tax software, marketing services, and postage.  These expenses appear to the Court

to be the daily operating needs of the company; VABB has not shown the Court that the funds

claimed in claim 26 were used to purchase any capital assets.

The Court thus finds that the funds advanced that serve as the basis for these claims were

used to meet the daily operating needs of VABB.  This factor weighs in favor of finding that the

claims of Mr. Manuel are true indebtedness.

On the other hand, if the holder of the debt or instrument willingly postpones collection,

it weighs in favor of an equity contribution than genuine indebtedness. VABB argued Mr.

Manuel freely delayed collection. During his closing argument, debtor's counsel stated that

"[t]hese were demand notes.  There were never any demands made on this."[190]  It is true that the

notes of claim 24 were demand notes; Mr. Manuel had the right to demand payment, but he also

had the right not to exercise that right up until a certain point.  For example, the first note

chronologically requires Mr. Manuel to make demand "in no even later than December 15,

2016."  The Court finds that the fact that Mr. Manuel did not demand payment on notes that were

not due immaterial and not indicative of intent to subordinate.  The note attached to claim 25 is

not a demand note, but a promissory note.  The note was issued on February 15, 2012, and

payments were to be made over the course of ten years, unless Mr. Manuel exercised his option

to accelerate—an option not available until February 2015.  Otherwise, under its terms, full

payment was not required to be made potentially until 2022.  As for claim 26, there was no note

accompanying this claim and thus no demand under a note could be made.

---

[190]      Trial Tr. 303.

Finally, the Court finds informative the fact that VABB treats these claims on its books as indebtedness.  For example, according to the Balance Sheet as of January 31, 2012, the "Total Note Payable – Warren Manuel" is $646,619.31.[191]  This amount appears to represent the amount owed on the claim 24 notes in the month before the issuance of the note for claim 25. Also on the balance sheet is $1,001,370.96 as of January 31, 2012, which is listed as "Accounts Payable Affiliated-WM" which seems to be the liability that was formalized into the claim 25 note.[192]  The balance sheet has a section describing the amount of equity in VABB.[193]  These facts are informative of VABB's intent that the amounts owed to Mr. Manuel were liabilities as opposed to equity contributions.

Considering the above factors and applying to the facts in the record regarding Mr. Manuel's transactions with VABB, the Court concludes that recharacterization is not appropriate. Mr. Manuel has claims in the form of loans and reimbursements of expenses.  These are debts and not investments to be relabeled as equity.

## CONCLUSION

For the foregoing reasons, the Court overrules the objection to claim 24 and 25 and partially sustains and partially overrules the objection to claim 26.  The Court will not equitably subordinate or recharacterize the claims filed by Mr. Manuel.  The Court will issue a separate order overruling in part and sustaining in part the objections to claim and denying the requests to equitably subordinate and recharacterize.

---

[191]     Manuel's Ex. W.

[192]     *See id.*

[193]     *Id.*

Dated:    November 5, 2014

_____
Rebecca B. Connelly
Chief, United States Bankruptcy Judge